# EXHIBIT A

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

FILED
1/18/2022 12:00 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH01326
Calendar, 15
16324795

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

**Chicago Heights Glass, Inc.**, an Illinois corporation, **Entekk Group, Ltd.**, an Illinois corporation,

    *Plaintiffs,*

    vs.

**Joel Phelps**, an Indiana resident

    *Defendant.*

**No. 2021-CH-01326**

### *SECOND AMENDED* COMPLAINT

**NOW COME** the Plaintiffs, Chicago Heights Glass, Inc., an Illinois corporation ("CHG") and Entekk Group, Ltd. ("Entekk"), an Illinois corporation ("Entekk") (collectively "Plaintiffs"), by and through their attorneys, FUCHS & ROSELLI, LTD., and for their *Second Amended Complaint* ("Complaint"), complaining of Defendant, Joel Phelps, an Indiana resident ("Phelps"), state as follows:

### Parties

1.     CHG is an Illinois corporation which was incorporated on April 23, 1962 and whose principal place of business is South Holland, Cook County, Illinois. At all relevant times, CHG has been an industry leading manufacturer and sub-contractor specializing, most notably, in custom glass façade construction and installation for skyscrapers throughout the Chicagoland area.

2.     Entekk is a top-tier custom designer, supplier, and fabricator of state-of-the-art unitized monumental façade systems for the commercial construction

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

market.  Entekk is an Illinois corporation which was incorporated on November 18, 2014, whose principal place of business is South Holland, Cook County, Illinois.

3.      Phelps is an individual residing in Indiana who, until June of 2020, worked for CHG.

4.      Reflection Windows ("Reflection" or "RWW") is an Illinois limited liability company whose address is 2525 N. Elston Ave., Suite D-240, Chicago, Cook County, IL 60647. Phelps is Reflections' Director of Curtainwall Operations.

### Jurisdiction and Venue

5.      This Court has subject matter jurisdiction over this action because the amount in controversy exceeds the minimum jurisdictional threshold, and because equitable and injunctive relief may be pursued in this Court.

6.      Venue and jurisdiction are proper in Cook County, Illinois because:  (i) the Plaintiffs' principal place of business is located in Cook County and Phelps previously worked at the same location; (ii)  Phelps agreed to venue and jurisdiction in Cook County, Illinois; (iii) the agreements at issue were negotiated and executed in Cook County; and, (iv) a substantial number of the acts and omissions giving rise to the claims asserted in this action occurred within Cook County, including, but not limited to the improper utilization of Plaintiffs' proprietary and confidential information as well as the unlawful solicitation of Plaintiffs' employees by Phelps.

### Factual Background

7.      Phelps initially worked for CHG as a project manager between 2008 and 2013 and then re-hired Phelps on or about July 7, 2015.

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

8.      Upon his re-hire by CHG as a senior project manager, Phelps' initial role was to manage CHG's major projects, in particular, the Optima Signature project. CHG and Phelps had agreed that if their renewed relationship (and the Optima project) were successful, Phelps would be promoted to serve as CHG's Vice President of Business Development.

9.      Following the successful completion of the Optima project, Phelps was subsequently promoted to be CHG's Vice President of Business Development in 2018. In this role, Phelps assisted CHG in locating high-rise construction jobs suitable for Plaintiff's proprietary glass façade technologies.

10.     Phelps' compensation consisted of both a regular salary as well as "Project Commissions" that were payable in regular monthly installments over the successful course of completion of a project, including but not limited to all executive functions from initial project tender through budgeting, estimating, purchasing agreements, resource sourcing, project management, project oversight, resource planning, scheduling, relationships with customers, negotiations, oversight of junior staff, contract and change order execution, and project closeout and receipt of final and complete project payments.

11.     Incident to his high-level position with CHG, Phelps was routinely given access to CHG's and its Affiliates' (as defined below) proprietary and confidential information in order to sell jobs to CHG's prospective clients.

12.     For example, Phelps was provided confidential information, regarding non-public improvements to patented "Talon Wall" technology, as well as financial

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

information regarding the historical efficacy and competitive advantage of the technology with regard to standard products used in the industry, to market for use on prospective projects on behalf of CHG.

13.     The Talon Wall® is a patented, fully-engineered, unitized, and factory glazed, revolutionary curtain wall system with fixed and operable components. The system accommodates complex geometry in all 3 planes and is also efficient and non-obtrusive. Talon Wall® systems are far less complex to fabricate and install than all other competitive systems because the Talon Wall® system has only two components to install – the finished unit and single pieces of floor trim.

14.     As a result of the foregoing, CHG and its Affiliates have a significant competitive advantage over their industry peers as the Talon Wall system has become the preferred standard for local high-rise construction projections within the Chicagoland area.

15.     The underlying public intellectual property (i.e. patent) for Talon Wall® is owned by Plaintiffs' affiliate, Talon Wall Holdings, LLC ("TWH"), while the confidential information underpinning specific elements and engineering behind Talon Wall's fabrication, along with various non-public improvements to it, are owned by Entekk.

16.     At all relevant times, Talon Wall® has been fabricated exclusively by Entekk, CHG or a licensed fabricator and the fabricated parts have thereafter been installed by CHG or a licensed fabricator. Both do so under strict agreements with

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

TWH (or one another) that secret that information away from the general public but allows each to perform their roles.

17. In addition to the confidential information regarding Talon Wall® itself, Phelps was further exposed to additional confidential information incident to his position at CHG. This included specific decision makers and contacts, as well as prospective projects and needs of key Entekk and CHG customers, personal information and salaries of key Entekk and CHG employees, various aspects of the Talon Wall® production processes and installation, methods, estimate spreadsheets, unit price analysis takeoff and spreadsheets, proposals and estimates and takeoffs for bids tendered to date, architectural drawing takeoff and reports, customer lists, purchase orders, extrusion drawings for aluminum, gasket, and PVC components, material pricing information, historical labor efficiency data and other confidential information.

18. The development of both categories of these trade secrets and confidential information cost Plaintiffs several million dollars and several years' worth of time invested in the research, development, and refinement of the same. The foregoing confidential information is highly confidential and not known to the general public nor within the fenestration industry itself and is the direct result of the inventor's over 30 years of industry experience.

19. Because of the extensive design work, testing, fabrication costs, pricing and marketing associated with the design and creation of the Talon Wall system if a competitor had the same extensive industry experience in designing and installing

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

window and curtainwall systems, it would take such an experienced and qualified competitor an equivalent number of years and several million dollars to organically develop and reproduce the same confidential information and trade secrets identified previously.

20.     Due to the highly confidential nature of this information and its value, access to information regarding the Talon Wall® confidential information is kept on Entekk's and CHG's secured personal server and is closely guarded using the protocols discussed below.

21.     This information is only made available via controlled administrative server access to the very limited numbers of employees who actually work with the subject confidential information, such as an upper echelon CHG executive like Phelps, other high-level administrators, and the engineers working on such projects.

22.     Plaintiffs restricted access to every file and folder that stores confidential information, on a granular basis, with each such individual having specific and appropriate permissions based upon that individual's role with the Plaintiffs.   Specifically, New Technology File System ("NTFS")[1] permissions were applied to every file and folder stored on a Microsoft Windows Server formatted with the NTFS file system.

23.     Thus, by way of example, an individual in marketing could generally not

---

[1] NTFS is a proprietary journaling file system developed by Microsoft which is a standard file system employed within the industry and globally.  NTFS has several technical improvements over the file systems that it superseded – File Allocation Table (FAT) and High Performance File System (HPFS) – such as improved support for metadata and advanced data structures to improve performance, reliability, and disk space use.

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

see files accessible to engineering.  Likewise, certain files which were accessible to a senior employee in marketing, like Phelps, could not be accessed by a junior employee in that same department.

24.     In addition to these specific file permissions, Plaintiffs' digital files were only accessible internally. Thus, no remote/external access to the Plaintiffs' server was permitted by Plaintiffs' employees.

25.     Consistent with his authority level, the Plaintiffs' and their Affiliates' confidential information was provided to Phelps in conformance with the foregoing security protocols.

26.     At no time was Phelps given permission to retain any company information, and certainly not confidential information, on a permanent or semi-permanent basis.

27.     As acknowledged in his own sworn testimony, Phelps was requested to transfer any company or confidential information stored on his laptop back to the CHG server upon his severance from CHG and to destroy all copies of it.

## Phelps Leaves CHG to Work for a Competitor

28.     After several years as CHG's VP of Business Development, Phelps abruptly provided notice to CHG that he was terminating his employment.  Although Phelps did not specify who his new employer would be, Phelps made exceedingly clear to CHG that Phelps would be working for a competitor of CHG and Entekk.

29.     Upon providing notice of his intention to terminate his employment, CHG and Phelps engaged in extensive negotiations (directly and between their

respective counsel) and the parties subsequently agreed to mutually terminate Phelps' employment with CHG, effective June 12, 2020, pursuant to a certain confidential *Severance and Release Agreement* (the "Agreement"). *See* Agreement, **Exhibit 1**, a true and accurate copy of which is being filed under seal.

30. On information and belief, Phelps consulted with an attorney during the negotiation/drafting of the Agreement as he specifically complained to CHG that he had to spend approximately $5,000 to consult with legal counsel to do so.

31. The Agreement provided significant consideration (i.e., $220,000) to Phelps in exchange for, among other things, Phelps agreeing to neither (1) disclose the "Confidential Information" (as defined within the Agreement) of CHG or its Affiliates (a term defined as "Entekk Group, Ltd., Talon Wall Holdings, LLC and KEL Holdings, LLC[."]); nor, (2) to solicit the employees of CHG or its Affiliates (for a period of one year) (hereinafter referred to as the "Provisions"):

9. Former Employee shall not, for a period of one (1) year after the Effective Date, solicit, recruit, any employees of the Company or the Company's Affiliates to leave their employment.

10. Former Employee acknowledges that Former Employee received and was provided valuable non-public information obtained, possessed or developed by the Company and/or the Affiliates in the ordinary course of their business and that the protection of such "Confidential Information" is of vital importance to the Company and the Affiliates' business and interests. Confidential Information is limited to non-public information concerning the Company and the Affiliates, and their respective employees, officers, customers, prices on bids issued before the time of separation, production processes and methods, employment practices, inventions that former employee was expressly aware of and involved in prior to the date of separation, blueprints, legal matters, regardless of whether devised, developed, produced, worked on, or invented in whole or in part by Former Employee or others, and whether or not copyrightable, trademarkable, licensable,

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

or reduced to practice. Former Employee further recognizes that the Company has received confidential or proprietary information from third parties subject to a duty on the Company's part to maintain the confidentiality of such Confidential Information and to use it only for certain limited purposes. Former Employee acknowledges and agrees that as an employee of the Company, Former Employee has been under a legal obligation to respect such Confidential Information. Former Employee agrees that Former Employee will not use any such Confidential Information for Former Employee's personal use or advantage, or disclose or make such Confidential Information available to others. Nothing herein prevents Former Employee from using Former Employee's general knowledge, skill, and experience in gainful employment by a third party after Former Employee's employment with the Company. Former Employee's commitment not to use or disclose Confidential Information does not apply to information that becomes publicly known without any breach of this Agreement by Former Employee.

*Id.* at ¶¶ 9–10.

32. Pursuant to the Agreement, Phelps was also required to return all Confidential Information (and any copies of the same) that CHG or its Affiliates had ever provided to him, as well as "all other materials and information (in whatever form) in Former Employee's possession including, without limitation, equipment, pricing agreements, contracts, product samples, financial information, business notes, business plans, documents, drawings, data, files, disks, … , all notes, memoranda, books, letters or data produced by, on behalf of or for the benefit of the Company and/or the Affiliates, and all copies thereof." (hereinafter the "Company Property"). *Id.* at ¶ 4.

33. CHG personally advised Phelps that, upon his resignation, he had received all of his regular Project Commission payments to date, and that he was owed no further compensation since he would no longer actively participate in the

9

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

active tasks involved with successful and profitable performance of the Projects.

34.     In the Agreement itself, Phelps acknowledges (in all caps) that he had "BEEN PAID ALL EARNED WAGES, BONUSES, COSTS, EXPENSES, VACATION PAY AND COMPENSATION FROM THE COMPANY UP TO THE DATE OF THIS AGREEMENT." Agreement at p. 2.

35.     As he was owed no money at the time of his resignation, the high amount of money paid to him in connection with the Agreement evidenced the high value of the Confidential Information and Company Property to which he previously had access.

36.     Yet, notwithstanding the plain language of the foregoing Provisions, Phelps adhered to neither.

37.     In violation of the Agreement, Phelps retained highly confidential documents and drawings which contained numerous items that would be deemed Confidential Information as per the terms of the Agreement and readily provided the same to RWW, as well as information and items that would be deemed Company Property.

38.     Phelps' theft of the Confidential Information and Company Property was, upon information and belief, orchestrated while Phelps was still employed with CHG.  Phelps' conduct was so brazen that he orchestrated a raid of it on his next to last day of employment with Plaintiffs. To do so, Phelps attached both a USB drive and a portable hard drive to his work computer and, upon information and belief,

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

extracted and transferred Confidential Information to Phelps' personal storage devices.

39.     Phelps' improper collection and retention of the Confidential Information is evidenced by the attached forensic report, which shows the downloads, dates, durations and storage hardware the information was downloaded to.  A true and correct copy of the forensic report is attached hereto as **Exhibit 2.**

40.     Phelps has also previously admitted via sworn affidavit that he had regularly stored Confidential Information on his personal devices. However, Phelps never returned any of the Confidential Information stored on these devices.

41.     Armed with the Confidential Information and Company Property of CHG and its Affiliates, Phelps was promptly hired by RWW, a direct competitor of CHG, in a new position, "Director of Curtain Wall" for RWW's newly formed Curtainwall Division. Shortly thereafter, Reflections and Phelps launched Reflections' UW8000 system (sometimes referred to as "UWALL") a clear knock-off of the Talon Wall® system using Phelps' insider knowledge of the Confidential Information and/or Company Property.[2]

42.     In fact, upon information and belief, Phelps' unique knowledge of CHG's and its Affiliates' Confidential Information and Company Property—was one of the primary reasons that Phelps was hired by RWW.

---

[2] RWW's and Phelps' clear infringement on the Talon Wall patent design is currently the subject of a separate Federal lawsuit.

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

43.     On information and belief, the Confidential Information and/or Company Property taken by Phelps include the following Confidential Information and Company pertaining to the Talon Wall system and other aspects of CHG's and its Affiliates' business:

a)     Proposal forms with clarifications and exclusions.
b)     Estimate spreadsheets
c)     Unit price analysis takeoff and spreadsheets
d)     Proposals and estimates and takeoffs for bids tendered to date
e)     Architectural drawing takeoff and reports
f)     Customer lists
g)     E-mails
h)     Letters of Intent to Purchase to principal suppliers
i)     Extrusion drawings for aluminum, gasket, and PVC components
j)     Material Pricing Information
k)     Purchase orders for critical system components
l)     Shop, Fabrication, Tag, Custom Application and Unit drawings
m)     Design drawings for anchor system and embedments
n)     Bill of Materials forms
o)     Structural calculations for system and projects to date
p)     Supplier Quotations
q)     Promotional Brochures
r)     Test reports
s)     Contract Agreements
t)     Subcontract Change Orders
u)     Accounting Information
v)     Schedules
w)     Meeting Minutes
x)     Login Information
y)     Photographs
z)     Quality Control Documentation
aa)     Specification
bb)     Submittals
cc)     Warranty Information
dd)     Union Information
ee)     Electronic Marketing Presentations and
ff)     Historical Labor

44.     Plaintiffs' information and belief as to the Confidential Information and Company Property wrongfully taken by Phelps is premised on several known facts.

First, prior to Phelps' employment at RWW, RWW had no real expertise in unitized curtain wall systems, including designing, engineering, fabricating, procuring, distributing, or installing Factory Glazed Unitized Curtainwall Systems, of which Talon Wall is a unique innovation.

45.     In fact, RWW's project history consists of either simple "punched window" openings manufactured by others like Traco or Kawneer into façade materials built by others, integration of 'stick built' curtainwall systems into low-rise façade areas utilizing systems manufactured by Kawneer, Pittco or YKK or others, or enclosure of buildings with a completely assembled and imported Factory Glazed Window Wall system manufactured in China.

46.     Phelps is not an engineer by trade and has virtually no technical knowledge other than what CHG taught him. Phelps had no design competence whatsoever and at no time created any of Plaintiffs' or Talon Wall® system designs. Phelps simply applied the technology that Plaintiffs or its Affiliates created in a manner that was directed solely by CHG pursuant to his sales efforts.

47.     Likewise, the estimating, unit analysis, proposal, costing, and clarification document format for project tenders was created by CHG and utilized for Phelps' work for Plaintiffs.  Phelps never created any document templates for those purposes whatsoever.

48.     The development of the Confidential Information and Company Property cost Plaintiffs several million dollars and several years' worth of time invested in the research, development, and refinement of the same.

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

49.     Yet in the short period of time since Phelps' appointment as RWW's Director of Curtain Wall, RWW was able to design, test, price, and market its knock-off UW8000 system and marketed the same to CHG's customers and clients. The only way this could be feasible is if Phelps provided RWW with a head start via the use of the Confidential Information and Company Property.

50.     One example of this is that Phelps used his confidential knowledge of Plaintiffs' supplier network and secretly contacted Plaintiffs' suppliers and improperly attempted to induce Plaintiffs' material and engineering suppliers to fabricate and provide an unauthorized copy of Plaintiffs' Confidential Information and Company Property to RWW for use in RWW's next-generation product.  This was discovered via an email sent to Joel's old email address, which CHG owns. *See* Copy of Email, a true and accurate copy of which is attached hereto as **Exhibit 3.**

51.     Further, although there are hundreds of gasket and interlock designs used in the unitized curtainwall industry, of those hundreds of designs, RWW chose to copy Plaintiffs', due to the incredible demonstrated performance of the Talon Wall® product to which Phelps was directly privy.  This unpermitted transfer of knowledge is evident when reviewing the design of RWW's typical existing gasket and interlock design from their legacy RW-9000 Window Wall system.  *See* RWW Gasket Design, a true and accurate copy of which is being filed under seal as **Exhibit 4**.  That existing design had been used on all of RWW's prior systems.

52.     Upon information and belief, RWW's existing design would not have been used in their new UW8000 system had the Confidential Information and

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

Company Property not been misappropriated.

53.     Plaintiffs' proven and successful existing interlock and gasket system, as well as the Talon Bolt anchor and embed system (in lieu of a standard '3 way' anchor bracket system) from their existing window wall system would not have been used had Phelps not provided the *exact* die drawing and part number of the gasket that Entekk had paid for and developed with their supplier Trelleborg, as well as the die drawings for the interlock design.

54.     The drawing for the RWW PMU page 0030 is highlighted to show Entekk's proprietary gasket number 13527-01-00, along with Entekk's proprietary drawing dated 8/30/17 for that gasket part.  *See* RWW PMU Excerpt, a true and accurate copy of which is being filed under seal as **Exhibit 5**.

55.     Notably, Trelleborg is and was forbidden from using proprietary designs between competitors.  Thus, Phelps and RWW would have had to deliberately mislead or otherwise induce Trelleborg to disclose information regarding Plaintiffs' proprietary gasket.

56.     As further evidence of his knowledge that the information he procured was Confidential Information and Company Property, Phelps contacted CHG (no less than a month after abruptly quitting) and tried to secure a license for RWW to use the Talon Wall® technology.  CHG and Entekk immediately declined this request.

57.     With full awareness that the Talon Wall® was a superior product to anything being offered by RWW (and the negative effect CHG's success would have upon Phelps' commission-based compensation with Reflection), Phelps elected to

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

breach the Agreement and provide the Confidential Information and/or Company Property of CHG and its Affiliates to RWW, so that RWW could create its own facsimile of the patented Talon Wall® system.

58.     Upon information and belief, RWW constructed a preliminary mock-up ("PMU") of its Talon Wall® knockoff and submitted the PMU for testing at a local testing facility.  To guard against the discovery of this obvious malfeasance, RWW went so far as to place its PMU behind a literal curtain wall to attempt to obscure the PMU from discovery.

59.     Upon information and belief, RWW's knockoff PMU includes Entekk's highly unique improvements to the Talon Wall®'s vertical air seal gasket, the aluminum mullion/gasket reglet/interlock design assembly, the concrete embeds, as well as the headless Talon Bolt, all of which were not publicly known and/or readily available to RWW and which constitute Confidential Information and/or Company Property.

60.     Upon information and belief, Phelps also used his confidential knowledge of Plaintiffs' supplier network and secretly contacted Plaintiffs' suppliers, which had never been used by RWW before, and improperly induced Plaintiffs' suppliers to fabricate and provide an unauthorized copy of the Confidential Information to RWW for use in RWW's next-generation product.

61.     RWW has already started to market its own competing products—which use the proprietary information provided by Phelps in regard to the Talon Wall®

improvements and other Confidential Information and/or Company Property—to potential customers.

62.     Put simply, it would be highly unlikely for RWW to  have reverse engineered the highly unique and non-public gasket and interlock which were recently developed by Entekk, to gain access to Plaintiffs' suppliers, to have developed a competitive price formula and marketing plan and to test and finalize the UW8000 system  without Phelps breaching the Agreement and providing RWW with the Confidential Information and/or Company Property, including the proprietary, non-public drawings of CHG and its Affiliates (in particular die drawings) to RWW.

63.     RWW is also utilizing other Confidential Information and Company Property provided to it by Phelps, including Plaintiffs' estimating, unit analysis, proposal, costing, and clarification document format for project tenders.  This is evidenced by RWW's bid proposal clarification document shared with Plaintiffs by a potential customer, RWW is now actively using Plaintiffs' specific bidding materials, qualification language, and other language to submit bids to potential clients of Plaintiffs.

**<u>Phelps Solicits Plaintiffs' Employees</u>**

64.     Unfortunately, Phelps has not limited his wrongful conduct to the use of CHG's and its Affiliates' Confidential Information and Company Property. In addition to the foregoing wrongful conduct, Phelps has also impermissibly solicited employees of CHG, in derogation of the Agreement.  *See* Agreement, <u>Exhibit 1</u> at ¶ 9.

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

65.     Specifically, Phelps has successfully solicited and RWW has hired CHG's then Operations Manager, one of CHG's Project Leaders, and two of CHG's Estimator/Project Managers, the latter two having been hired away by RWW in mid-February 2021.

66.     In addition to the foregoing violations of the non-solicitation clause, Phelps remains actively engaged in the further solicitation of CHG's employees.

67.     Despite his egregious conduct, Phelps acknowledged (as part of the Agreement negotiated by his chosen counsel) that the protections being asked for by CHG and its Affiliates in regard to their Confidential Information and the non-solicitation of their employees were both reasonable and necessary and, moreover, that they did not cause an undue hardship to Phelps:

> Former Employee agrees that the foregoing restrictions in this Agreement are reasonable and necessary for the proper protection of the business and interests of the Company and will not deprive Former Employee of the means or opportunity for suitably supporting and maintaining Former Employee and Former Employee's family in a manner in which they have become accustomed to or for obtaining employment after the termination of this Agreement.

Agreement, Exhibit 1 at ¶ 12.

68.     Phelps' wrongful conduct in defiance of the Agreement supports the Agreement's very existence and legitimacy, and argues for the enforcement of its terms against him which he explicitly agreed were required to protect the legitimate business interests of CHG and its Affiliates in (1) preventing the disclosure of their confidential and proprietary information; as well as, (2) avoiding the solicitation of their employees.

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

69.     Pursuant to the Agreement, Phelps also acknowledged that, should he breach the Agreement or the covenants contained therein, he would be required to pay the attorneys' fees of CHG and its Affiliates in connection with enforcing the Agreement. *Id.* at ¶ 13. This provision is equally reasonable as it is enforceable given the consideration bestowed upon Phelps in exchange for the Agreement, which he willingly accepted all while contumaciously plotting to commit exacting and precise breaches of it.

70.     Indeed, had CHG known Phelps had already begun improperly collecting and distributing the Confidential Information, it would never have entered into the Agreement with Phelps and would never have paid him the $220,000 in consideration for the promises made under the Agreement.

<u>**COUNT I**</u>
***Breach of Contract***
**(Plaintiffs against Phelps)**

71.     Plaintiffs hereby incorporates and re-alleges Paragraphs 1–70, as if set forth herein.

72.     As detailed herein, CHG and Phelps entered into an Agreement whereby Phelps agreed to (1) not use the Confidential Information of CHG or its Affiliates; (2) to not solicit the employees of CHG or its Affiliates for a period of one year following the effective date of the Agreement, and (3) to return any Confidential Information and/or Company Property he had previously taken (as previously defined, the "Provisions"). *See* Agreement, <u>Exhibit 1</u>, at ¶¶ 9–10.

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

73.     By virtue of the Confidential Information Provision of the Agreement (which expressly prohibits Phelps from disclosing Entekk's Confidential Information to third-parties) and the provision precluding Phelps from retaining Company Property, the parties clearly intended that Entekk benefit from the Agreement. Accordingly, Entekk is an intended third-party beneficiary of the Agreement that has the right to enforce the provisions of the Agreement.

74.     Phelps understood and agreed that these Provisions were vital to the business interests of CHG and Entekk and were a key consideration in CHG agreeing to pay the $220,000 to Phelps.

75.     As a result of Phelps' wrongful conduct and his material breach of the Provisions contained in the Agreement, CHG has lost the irreplaceable value of its and its Affiliates' Confidential Information and/or Company Property at least in regard to the Talon Wall®, lost the value of its and its Affiliates property (by virtue of its dissemination to third-parties) and lost the unique employees who terminated their employment with CHG and/or its Affiliates following Phelps' improper solicitation.

76.     Phelps' activities, as described above, are contrary to and violate the terms of his Agreement.

77.     Conversely, Plaintiffs have fully complied with the Agreement.

78.     As a result of Phelps' wrongful conduct and his breach of the Provisions contained in the Agreement, Plaintiffs been damaged through the unpermitted loss of its Affiliates' confidential information, as well as the loss of CHG's valuable

FILED DATE: 1/18/2022 12:00 AM  2021CH01326

employees.

79.     The Agreement provides that Phelps shall pay all reasonable attorneys' fees and costs that are incurred by CHG to enforce the Agreement. *Id.* at ¶ 13.

80.     As detailed above and as Phelps acknowledged through the Agreement, the Provisions were specifically included to protect the vital business interests of CHG and the Provisions were narrowly tailored so as to not cause an undue hardship to Phelps. *Id.* at ¶ 12.

81.     CHG's interests in its employee relationships are unique in that each of the employees which have been solicited by Phelps were extensively trained by CHG and said employees were essential to CHG's continuing business.

82.     Plaintiffs have no adequate remedy at law other than recission of the Agreement and return of the $220,000 in consideration paid to Phelps, as CHG's and its Affiliates' Confidential Information and invaluable and unique business interests, cannot be replaced, returned, or remedied at law.

83.     As a result of Phelps' material breach, CHG has also been required to incur attorneys' fees and costs in connection with the enforcement of the Agreement.

**WHEREFORE**, Plaintiffs, Chicago Heights Glass, Inc. and Entekk Group, Ltd., respectfully prays for the entry of an order providing the following relief:

A.     Disgorging the payments received by Phelps from CHG as described in this Complaint and awarding the same in actual damages to CHG;

B.     Providing an award of CHG's reasonable attorneys' fees and costs, pursuant to the Agreement; and,

21

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

C.     For such other and further relief as this Honorable Court deems just and proper.

**COUNT II**
***Breach of Fiduciary Duty***
**(CHG against Phelps)**
**(In the alternative)**

84.     CHG hereby incorporates and re-alleges Paragraphs 1–70 as if set forth herein.

85.     On information and belief, prior to Phelps' execution of the Agreement, Phelps began compiling and leaking the Confidential Information and/or Company Property, and potentially other information discussed above to Reflection in order to secure a position with Reflections.

86.     As a high-level and highly compensated employee of CHG, Phelps had an absolute duty of loyalty to CHG, including ensuring that CHG's Confidential Information and Company Property was properly and safely maintained, and hidden from CHG's competitors, such as Reflection.

87.     Indeed, upon Phelp's re-hire by CHG, Phelps received a copy of CHG's Employee Manual and signed a receipt for the same. See Signed Receipt Dated 8/3/15, a true and accurate copy of which is attached hereto as **Exhibit 6**.

88.     CHG's Employee Handbook specifically laid out both the reasonable categories of information that employees of CHG could expect to encounter and the careful manner in which these employees were to protect this information. See CHG's Employee Handbooks during the relevant time period, a true and accurate copy of which is attached hereto as **Group Exhibit 7** at pp. 3–4.

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

89.     Clearly, Phelps was aware of the significant damage release of the Confidential Information and Company Property would cause CHG if released to CHG's competitors.

90.     Phelps was also under a duty to disclose any disclosure of the Confidential Information and Company Property to CHG's competitors, such as Reflections.

91.     Phelps breached these duties by: (1) improperly compiling, saving, copying or otherwise gathering Confidential Information, Company Information and other information (such as employee information, pricing information, bidding information, the identity of client decision makers, project needs and budgets for specific clients, project specific scheduling information and roll out information, among other items) for his own use; (2) disclosing the Confidential Information, Company Property and other information to RWW while employed by CHG; (3) failing to notify CHG of these actions and disclosures and/or (4) other breaches of his fiduciary duty to CHG.

92.     As a direct and proximate result of Phelp's intentional breach of his fiduciary duties CHG lost the irreplaceable value of its and its Affiliates' Confidential Information and Company Property at least in regard to the Talon Wall®, the unique employees who terminated their employment with CHG and/or its Affiliates following Phelps' improper solicitation; and the $220,000 in  consideration paid to Phelps as part of the Agreement, which CHG never would have paid had it known of Phelps' improper disclosures.

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

**WHEREFORE**, Plaintiff, Chicago Heights Glass, Inc., respectfully requests that this Honorable Court enter an Order as follows:

A.     Award damages incurred by CHG in an amount to be proven at trial;

B.     Awarding Punitive damages; and,

C.     For such other and further relief as this Honorable Court deems just and proper.

## JURY DEMAND

**NOW COME** the Plaintiffs, by and through their attorneys, Fuchs & Roselli, Ltd., and demand trial by jury on all causes of action so triable.

Respectfully submitted,

**Chicago Heights Glass, Inc. and Entekk Group, Ltd.**, *Plaintiffs*

By:    /s/ David R. Buetow
       One of their Attorneys

David Buetow (dbuetow@frltd.com)
Shomshon Moskowitz (smoskowitz@frltd.com)
Scott A. Nehls (snehls@frltd.com)
**FUCHS & ROSELLI, LTD.**
200 South Wacker Drive, Suite 600
Chicago, IL  60606
(312) 651-2400
Firm No. 18573

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

## VERIFICATION BY CERTIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure (735 ILCS 5/1-109), the undersigned certifies that the statements set forth in this *Verified Complaint at Equity and Law and for Other Relief* are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

**Chicago Heights Glass, Inc.**, *Plaintiff*

BY: _____

Digitally signed by Kurt LeVan - CHG
DN: C=US, E=klevan@chicagoheightsglass.com,
O=Chicago Heights Glass Inc, CN=Kurt LeVan - CHG
Date: 2022.01.17 16:15:24-06'00'

Kurtis E. Levan

ITS: _____President_____

**Entekk Group, Ltd.**, *Plaintiff*

BY: _____

Digitally signed by Kurt LeVan - Entekk
DN: C=US, E=klevan@entekk.com,
CN="Kurt LeVan - Entekk "
Date: 2022.01.17 16:15:45-06'00'

Kurtis E. Levan

ITS: _____President_____

25

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM    2021CH01326



EXHIBIT
1

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL



FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL



FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL



REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326





REDACTED - TO BE FILED UNDER SEAL

EXHIBIT
2

FILED DATE: 1/18/2022 12:00 AM   2021CH01326



REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

EXHIBIT

3

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

REDACTED - TO BE FILED UNDER SEAL

**EXHIBIT**

**4**

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

REDACTED - TO BE FILED UNDER SEAL

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM 2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM 2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM  2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM  2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

REDACTED - TO BE FILED UNDER SEAL

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM  2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM 2021CH01326

FILED DATE: 1/18/2022 12:00 AM  2021CH01326

REDACTED - TO BE FILED UNDER SEAL

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM 2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM 2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

# REDACTED - TO BE FILED UNDER SEAL





EXHIBIT
6

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

**EXHIBIT**

**7**

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

FILED DATE: 1/18/2022 12:00 AM   2021CH01326



REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326



REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326



REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326



REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL



REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326



REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326



REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326



REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326



FILED DATE: 1/18/2022 12:00 AM   2021CH01326



REDACTED - TO BE FILED UNDER SEAL

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326



FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL



FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL



REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL



FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL



REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326



REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL



REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326

REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326



REDACTED - TO BE FILED UNDER SEAL

FILED DATE: 1/18/2022 12:00 AM   2021CH01326