IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO HEIGHTS GLASS, INC., an Illinois corporation, and ENTEKK GROUP, LTD., an Illinois corporation, | )<br>)<br>) |
| Plaintiffs, | ) Case No.  22 C 0829 |
| v. | )<br>) Judge Robert W. Gettleman |
| JOEL PHELPS, an Indiana resident, | ) |
| Defendant. | ) |

# MEMORANDUM OPINION AND ORDER

Plaintiffs Chicago Heights Glass, Inc.("CHG") and Entekk Group Ltd., sued CHG's former employee defendant Joel Phelps, and his current employer, Reflection Window Company, LLC ("Reflection") in the Circuit Court of Cook County, Illinois, asserting claims for breach of contract against Phelps, tortious interference with contract against Reflection, violations of the Illinois Trade Secrets Act against both defendants, and civil conspiracy against both defendants. After plaintiffs dropped their claims against Reflection in their Second Amended Complaint ("complaint"), Phelps removed the case to this court based on diversity of citizenship and moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.   For the reasons described below, that motion is denied.

# BACKGROUND[1]

CHG is an industry-leading manufacturer and sub-contractor specializing in, among other things not relevant to the case, custom glass façade construction and installation for skyscrapers

---

[1] The background facts are taken from the factual allegations of the complaint and are presumed true for purposes of the pending motion.   W. Bend Mut. Ins. Co. v. Schumacher, 844 F.3d 670, 675 (7th Cir. 2016).

throughout the Chicagoland area. Entekk is a top tier custom designer, supplier, and fabricator of state-of-the-art unitized monumental façade systems for the commercial construction market.

Defendant worked for CHG as a project manager from 2008 until 2013. CHG re-hired defendant in July 2015 as a senior project manager. He was promoted to Vice President of Business Operations in 2018. In that position he assisted CHG in locating high-rise construction jobs suitable for CHG's proprietary glass façade technologies.

In his position, defendant was given access to CHG's and its affiliates' proprietary and confidential information, including non-public improvements to patented "Talon Wall" technology, and financial information "regarding the historical efficacy and competitive advantage of the technology with regard to standard products used in the industry." Talon Wall is "a patented, fully engineered, unitized, and fully glazed revolutionary curtain wall system with fixed and operable components." Talon Wall systems are far less complex to fabricate and install than all other competitive systems because it has only two components to install—the finished unit and single pieces of floor trim. As a result, CHG and its affiliates have a significant competitive advantage over their industry peers, and the Talon Wall has become the preferred standard for local high-rise construction projects.

The Talon Wall patent is owned by CHG's affiliate, Talon Wall Holdings, LLC, and the confidential information "underpinning specific elements and engineering behind [its] fabrication, along with various non-public improvements to it, are owned by Entekk. Talon Wall has always been fabricated exclusively by Entekk, CHG, or a licensed fabricator under strict agreements that keep information away from the general public.

2

Sometime in late May or early June 2020, defendant notified CHG that he was terminating his employment. He indicated that he would be joining a competitor of CHG. CHG and defendant engaged in extensive negotiations, both directly and through counsel, ultimately resulting in an agreement to terminate defendant's employment effective June 12, 2020, pursuant to a "Severance and Release Agreement." Under the terms of that agreement, defendant received $220,000, acknowledged that he had received valuable non-public information, agreed not to disclose any such "confidential information" as that term was described in the agreement, and not to solicit any employees of CHG or its affiliates for a period of one year. Defendant also acknowledged that he had been paid all earned wages, bonuses, costs, expenses, and vacation pay and compensation up to the date of the agreement. Plaintiffs allege that defendant breached that agreement by taking a long list of confidential information pertaining to the Talon Wall system, as well as other aspects of CHG's and its affiliates' business, and providing that information to his new employer Reflection. The complaint also alleges that defendant solicited CHG employees to work for Reflection.

## DISCUSSION

The complaint contains two counts against defendant. Count I is a claim for breach of the Severance and Release Agreement (the "Severance Agreement"), and count II, brought in the alternative, is a claim for breach of fiduciary duty. Defendant has moved to dismiss both counts under Fed. R. Civ.12 (b)(6) for failure to state a claim. The purpose of such a motion is to test the sufficiency of the complaint, not to judge the merits of the case. Gibson v. City of Chicago, 910 F. 2d. 1510, 1520 (7th Cir. 1990). When considering the motion, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in plaintiff's favor.

McMillan v. Collection Professionals Inc., 455 F.3d 754, 758 (7th Cir. 2006). To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

When reviewing a Rule 12(b)(6) motion to dismiss, the court is generally limited to the allegations within the four corners of the complaint, along with any exhibits attached to the complaint and any documents attached to the motion that are referenced in and central to plaintiff's claims. Scibetta v. Rehtmeyer, Inc., 2005 WL 331559 at *1-2 (N.D. Ill. Feb. 9, 2005). Both parties acknowledge this principle, yet curiously both attach declarations in support of their positions. Defendant, in particular, supports his argument that plaintiff did not protect its confidential information with several declarations from former CHG employees. Such declarations are inappropriate for consideration and are excluded from the court's consideration of the pending motion.

Count I alleges that defendant breached the Severance Agreement. To state a claim for breach of contract under Illinois law plaintiff must plausibly allege: 1) offer and acceptance; 2) consideration; 3) definite and certain terms; 4) plaintiff's performance; 5) defendant's breach; and 6) damages resulting from the breach. Barille v. Sears Roebuck and Co., 289 Ill App. 3d 171, 175 (1st Dist. 1997). Defendant argues that the complaint fails to allege consideration for the agreement, and that the terms are overly broad and unenforceable as matter of law.

As to consideration, the Severance Agreement clearly indicates that defendant received $220,000 in consideration for his agreement to the terms of the contract. Despite the language of

4

the contract, defendant argues that the $220,000 was not "severance" or consideration for the agreement, but instead was a "partial payment of earned bonuses already due and owing to him." Yet, in the Severance Agreement, he specifically agreed that that CHG did not owe him any bonuses or wages, and his only support for his position is his own declaration that the court has excluded from consideration. Consequently, the court concludes that the complaint adequately pleads consideration.

Next, defendant argues that the restrictive covenants in the Severance Agreement are overbroad and unenforceable. Under Illinois law, covenants not to compete are disfavored and held to a high standard. Cambridge Eng'g, Inc. v. Mercury Partners 90 BI, Inc., 378 Ill. App.3d 437, 447 (1st Dist. 2007). To be enforceable under Illinois law, a restrictive covenant must contain a reasonable restraint and be supported by consideration. Reliable Fire Equip. Co. v. Arredondo, 965 N.E. 2d 393, 396 (Ill. 2011). Illinois courts consider three factors when evaluating the reasonableness of the restraint: 1) whether the restraint is greater than required to protect a legitimate business interest of the employer; 2) whether it imposes an undue hardship on the employee; and 3) whether it poses an injury to the public. Id. The first factor "is based on the totality of the circumstances of the particular case," including but not limited to "the near-permanence of customers' relationships, the employee's acquisition of confidential information through his employment, and time and place restrictions. No factor carries any more weight than any other, but rather its importance will depend on the specific facts and circumstances of the individual case." Id. at 403. Because the analysis is so fact intensive, "unless the covenant is patently unreasonable, the parties must be given a full opportunity to develop the necessary

evidentiary record." Allied Waste Services of North America, LLC v. Tribble, 177 F. Supp.3d 1103, 1110 (N.D. Ill. 2016).

Defendant first challenges the confidentiality clause in the Severance Agreement as "hopelessly overbroad in scope and dangerously overreaching in nature." Under Illinois law, confidentiality agreements are considered restrictive covenants and are reviewed with a suspicious eye. Tax Track Sys. Corp. v. New Inv. World, Inc., 478 F.3d 783, 787 (7th Cir. 2007). The confidentiality clause provides:

> Former Employee acknowledges that Former Employee received and was provided valuable non-public information obtained, possessed or developed by the Company and/or the Affiliates in the ordinary course of their business and that the protection of such "Confidential Information" is of vital importance to the Company and the Affiliates' business and interests. Confidential Information is limited to non-public information concerning the Company and the Affiliates, and their respective employees, officers, customers, prices on bids issued before the time of separation, production processes and methods, employment practices, inventions that former employee was expressly aware of and involved in prior to the date of separation, blueprints, legal matters, regardless of whether devised, developed, produced, worked on, or invented in whole or in part by Former Employee or others, and whether or not copyrightable, trademarkable, licensable, or reduced to practice. Former Employee further recognizes that the Company has received confidential or proprietary information from third parties subject to a duty on the Company's part to maintain the confidentiality of such Confidential Information and to use it only for certain limited purposes. Former Employee acknowledges and agrees that as an employee of the Company, Former Employee has been under a legal obligation to respect such Confidential Information. Former Employee agrees that Former Employee will not use any such Confidential Information for Former Employee's personal use or advantage, or disclose or make such Confidential Information available to others. Nothing herein prevents Former Employee from using Former Employee's general knowledge, skill, and experience in gainful employment by a third party after Former Employee's employment with the Company. Former Employee's commitment not to use or disclose Confidential Information does

6

> not apply to information that becomes publicly known without any breach of this Agreement by Former Employee.

The court disagrees with defendant that the definition of confidential information contained in the agreement is overly broad. The agreement limits confidential information to "non-public" information concerning the company and its affiliates, and then lists the type of information covered, such as prices on bids issued before the time of separation, production processes and methods, employment practices, and inventions that defendant was expressly aware of and involved in prior to the date of separation. Contrary to defendant's assertions, the clause, although broad, does not include all aspects of plaintiffs' businesses, but is limited to the types of information listed. See Allied Waste Services of North America, 177 F. Supp.3d at 1111.

Defendant also argues that the confidentiality provision is unenforceable because it has no temporal or geographic limitations. The court agrees that the provision lacks any durational or geographic limitations. And while it is true that under Illinois law such reasonable limitations are required for a restrictive covenant to be enforceable, the requirement does not extend to trade secrets. Id. Consequently, to determine the enforceability of the confidentiality provision the court must determine whether any of the information protected by the provision constitutes trade secrets. That determination cannot be made without discovery and cannot be resolved on a motion to dismiss. Id.

Defendant next argues that even if the Severance Agreement and the confidentiality provision are enforceable, plaintiffs' claims have been released by the agreement itself. The release language in paragraph 5 of the Severance Agreement is, as defendant argues, extremely broad. CHG released all claims, demands, grievances, causes of action or right of any kind that the company may have or claim to have, whether known or unknown, against defendant from the

7

beginning of time to the date of the execution by the company of the agreement.   CHC also agreed that the release includes the release of any claims, actions, or rights arising from any cause, matter or thing, including but not limited to the employment relationship or separation of employment.

Defendant argues that because the complaint alleges that defendant began taking confidential information and/or company property prior to the date of the execution of the agreement, CHG has released the claims.   Although the agreement may have released any claim that CHG had prior to its execution, the first sentence of the release states "Except for any claims arising from a violation of this agreement . . . ."   Consequently, the court rejects defendant's position that all of plaintiffs' claims, including claims based on the non-solicitation provision, have been released.

Finally, defendant argues that Count II, alleging breach of fiduciary duty, fails to state a claim because the defendant, as an employee, had no such duty.   Defendant was a vice president at the time he is alleged to have acted improperly, and whether that position created a fiduciary relationship cannot be determined on a motion to dismiss.   Nor can defendant argue that any such claim for breach of fiduciary duty has been released in the Severance Agreement, because the count is brought in the alternative, should the court agree with defendant that the Severance Agreement is unenforceable.   In that event, plaintiffs would be able to assert a claim based on defendant's conduct while employed as an office of CHG.   Consequently, the court denies defendant's motion to dismiss.

## **CONCLUSION**

8

For the reasons described above, defendant's motion to dismiss [Doc. 14] is denied. Defendant is directed to answer the second amended complaint by June 13, 2022. The parties are directed to file a joint status report on this court's form by June 20, 2022.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE:** May 18, 2022